THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
FRANK BURGOS, Defendant-Appellant.

First District (6th Division)   No. 1—86—2710

Opinion filed May 26, 1989.

Michael J. Pelletier and Marie Carlson, both of State Appellate Defender's Office, and Winston & Strawn, both of Chicago (Julie A. Bauer, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Carol L. Gaines, and Judy L. DeAngelis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a jury trial, defendant, Frank Burgos, was convicted of the murder of Alfreda Campbell and was sentenced to a natural life prison term. Defendant appeals, contending that the trial court erred in admitting evidence of a prior assault committed by defendant; that the trial court erred in admitting a statement of the murder victim as an excited utterance; that he was denied a fair trial by the prosecutor's misstatement during closing argument; and that the State failed to prove him guilty of murder beyond a reasonable doubt.

Dr. Stanley Porter testified that on November 12, 1980, at ap-

proximately 2:40 a.m., he was awakened by screams and shouts coming from the eighth-floor hallway of the apartment building where he was living. Dr. Porter went to his door and looked out of the peephole. He saw nobody, but heard heavy breathing and saw blood on the peephole. He asked who was out in the hall, but received no response. Dr. Porter opened the door and saw a young black woman with multiple stab wounds lying in front of his apartment door. The woman later was identified as Campbell.

Dr. Porter noticed bloodstains on the floor and saw a knife next to Campbell. Dr. Porter's wife brought him a towel which he used to cover the woman's naked body. He stayed with Campbell until the police arrived about 10 minutes later. During that time, the woman was moaning and groaning. He did not have any conversation with her.

Officer Michael Rodgers testified that at approximately 2:40 a.m., he and his partner received a radio assignment of a woman calling for help on the eighth floor of a Lincoln Park apartment building. When Rodgers arrived at that location, he observed Campbell lying on the carpet in front of and facing apartment 809. Campbell was bleeding from stab wounds in her abdomen and chest. The door to apartment 809 was open and Dr. Porter, whom Rodgers knew, was assisting the woman. Rodgers asked the woman what had happened and where she came from, but he could not understand her responses. He then asked her who stabbed her, and she replied, "Frank."

While Rodgers was attending to Campbell, he heard a door open and close. He turned around and observed a man coming out of an apartment down the hall, from the direction of apartment 814. Rodgers described the man as Hispanic, approximately 5 feet 6 inches tall, weighing 140 to 150 pounds, and wearing glasses. Rodgers identified the man as defendant. Dr. Porter also testified that he saw a man walking down the hall in a wavering fashion. Dr. Porter identified that man as defendant.

Campbell was taken by squadrol to a hospital. After she was removed, Rodgers noticed a knife which had been under her body. He then followed a trail of blood on the walls and the carpeting of the hallway, from apartment 809 to apartment 814. Inside the apartment, Rodgers found large amounts of blood throughout the bedroom and on the walls. (It is undisputed that defendant resided in apartment 814.)

Sergeant Thomas Stevens testified that he was assigned to investigate the Campbell stabbing. He went to the hospital, but was unable to interview Campbell. Stevens proceeded to the apartment building, where he observed a large pool of blood outside apartment 809 and on

either side of the door. He followed the trail of blood, which led to apartment 814. Inside the apartment, Stevens observed blood on the living room carpet, on the bedroom floor and walls, and on the bed. He also observed a metal top of a hammer on the bed and a wooden hammer handle next to the bed. Additionally, there was a pair of women's blue jeans on a hanger, a brown striped blouse, a beige bra and white panties in the area of the bed. On the floor near the bathroom door was a blood-spattered white and gray checked shirt.

On that morning, Stevens contacted Campbell's mother. The following day, a woman identifying herself as Campbell's sister contacted Stevens. After talking to this woman, Stevens sent a Leeds message to the New York police department and initiated a stop order for defendant, indicating that he was wanted for an offense. (Defendant was apprehended in New York and was extradited to Illinois on June 5, 1984.)

Officer Michael McGuire testified that he was assigned to process the crime scene. McGuire photographed the interior of the apartment as well as the hallway where Campbell was found. He took the knife which was in the hallway as well as various items of clothing from apartment 814. He also took a hammer head and handle from the bedroom of that apartment. Latent prints were lifted from a package of cigarettes, a bottle of vodka and the television set. The latent print from the television set was that of defendant, and the latent print from the package of cigarettes was that of Campbell.

Dr. Robert Kirschner testified that he performed an autopsy on Campbell. He observed a blunt trauma wound on the deceased's right cheek which was consistent with a blow by a hammer. Dr. Kirschner opined that Campbell's death was caused by multiple stab wounds to the chest and abdominal area.

Joyce Ross, Campbell's sister, testified that she last saw her sister on November 11, 1980, at their mother's home. Defendant was with Campbell, and the two left together in a taxi cab. Ross stated that she had seen Campbell with defendant on one previous occasion.

Prior to trial, defendant made a motion *in limine* seeking to prevent a State's witness, Rosetta Bishop, from testifying as to defendant's assault upon her on December 3, 1979. The court denied defendant's motion, finding that the testimony would be allowed for the purpose of showing identity and *modus operandi*, as the prosecution had sufficiently demonstrated a similarity between the prior assault and the Campbell stabbing. Defendant additionally sought to bar Rodgers from testifying that Campbell said "Frank" when Rodgers asked "Who stabbed you?" The trial court also denied this motion.

Defendant initially contends that the trial court erred in denying his motion *in limine*. We first will address the propriety of the trial court's decision to permit Bishop to testify.

The substance of Bishop's testimony is as follows: In 1979, Bishop was living with defendant in his apartment. On December 3, 1979, at approximately 1:30 a.m., she was awakened by pain in her face and head. Defendant was hitting her with something. Bishop ran into the living room, and she saw that defendant had a hammer in his hand. She tried to persuade defendant to stop, but he kept cursing and coming at her with the hammer. Defendant then obtained a butcher knife from the kitchen. He held the knife in his left hand and the hammer in his right hand. Bishop picked up a kitchen chair and hit defendant on the head, knocking him down on all fours. He still was holding the knife and hammer. Bishop threw the chair at defendant and ran naked out of the apartment. A squad car picked her up and took her to the hospital where she remained for three weeks. She had surgery to remove her eye and at trial wore a patch, which she removed to show her injury to the jury. Bishop did not file charges against defendant for this incident.

■ Generally, evidence of crimes not charged in the indictment is inadmissible. (*People v. Barbour* (1982), 106 Ill. App. 3d 993, 436 N.E.2d 667.) Evidence of other crimes, however, is admissible if the evidence tends to show motive, intent, identity, absence of mistake, or *modus operandi*. (*People v. Kokoraleis* (1987), 154 Ill. App. 3d 519, 507 N.E.2d 146.) The term *modus operandi* refers to a pattern of criminal behavior so distinct that separate crimes can be recognized as the work of the same person. Nonetheless, it is not necessary that the crimes be identical to permit the other crime to be admitted into evidence to prove *modus operandi*. (*People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 485 N.E.2d 1292.) A trial court's decision on the issue of *modus operandi* will be overturned only where an abuse of discretion occurs. *People v. Martin* (1979), 80 Ill. App. 3d 281, 399 N.E.2d 265.

■ We believe that the trial court properly admitted the evidence of defendant's attack on Bishop. The crimes against Bishop and against Campbell were sufficiently similar as to mark them as the work of defendant. Specifically, the similarities are as follows: both women were black and were in their mid-twenties; both women knew defendant prior to the attack; both women were naked when the attacks occurred; both attacks occurred in the bed of defendant's bedroom; both attacks occurred in the early morning hours; and both attacks involved the use of a hammer and a knife. Bishop was hit in the

head by a hammer while defendant held a knife in his other hand. Campbell died from multiple stab wounds and received an injury to her head which was consistent with a blow from a hammer. We do not believe that the trial court abused its discretion in concluding that these similarities sufficiently demonstrated that both incidents likely were the acts of defendant.

Defendant notes that the two incidents occurred nearly one year apart. Nonetheless, in our judgment, the assault on Bishop was not too remote in time to permit the circumstances surrounding it to serve as evidence here. See *Porter v. Carter* (1968), 38 Ill. 2d 496, 232 N.E.2d 692 (evidence of an offense occurring seven years after the offense currently being prosecuted admitted to establish identity and *common design*); *People v. Hanei* (1980), 81 Ill. App. 3d 690, 403 N.E.2d 16 (evidence of an offense occurring five years prior to the offense currently being prosecuted admitted to establish *modus operandi*).

Moreover, we do not believe that any prejudice which may have resulted from Bishop's testimony outweighs its probative value. Defendant notes that Bishop described a brutal attack on herself, identified defendant as her assailant, and then stated that no charges had ever been filed on the incident, permitting the jury to conclude that defendant had committed a violent assault on Bishop and that he had not been punished for that assault. Defendant also points to the fact that Bishop was allowed to raise her eye patch to show the jury that her eye had been removed as a result of the attack.

■ Initially we observe that defendant failed to object at trial to Bishop's display of her injury to the jury. Accordingly, defendant has waived objection to that display for purposes of this appeal. (See *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) The balance of Bishop's testimony demonstrated the strong similarities between defendant's attack on her and the attack on Campbell, and we believe that any prejudice engendered by the testimony was cured by a limiting instruction to the jury. (See *People v. Anderson* (1982), 108 Ill. App. 3d 563, 439 N.E.2d 65.) Thus, we conclude that the trial court properly denied defendant's motion *in limine* requesting that Bishop not be permitted to testify.

We also conclude that the trial court properly denied defendant's motion *in limine* requesting that Rodgers not be permitted to testify as to Campbell's response to his question "Who stabbed you?" We find that the statement was properly admitted as a spontaneous declaration exception to the hearsay rule.

■ For testimony to qualify as a spontaneous declaration, three

elements must be present: an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; absence of time to fabricate; and the statement must relate to the circumstances of the occurrence. (*People v. Poland* (1961), 22 Ill. 2d 175, 174 N.E.2d 804.) The spontaneity of a statement is to be judged from the totality of the circumstances surrounding the event. (*People v. Chatman* (1982), 110 Ill. App. 3d 19, 441 N.E.2d 1292.) Among the circumstances to be considered is the declarant's mental state at the time of the statement (*People v. Smith* (1984), 127 Ill. App. 3d 622, 469 N.E.2d 634), and the fact that the statement was made in response to a question about "who did this" does not necessarily destroy its spontaneity. *People v. Gacho* (1988), 122 Ill. 2d 221, 522 N.E.2d 1146; *People v. Shum* (1987), 117 Ill. 2d 317, 512 N.E.2d 1183.

■ We believe that here the trial court correctly concluded that the requirements for the spontaneous declaration exception to the hearsay rule had been met. It is clear that the occurrence was sufficiently startling to produce a spontaneous and unreflecting statement. Campbell was brutally attacked and suffered serious injuries to her head and abdomen which ultimately resulted in her death. She fled the apartment where the attack occurred and was found down the hall, bleeding profusely. For the next 10 to 15 minutes, she lay moaning and groaning. In light of these circumstances, we find that her statement to Rodgers was spontaneous and unreflecting.

Moreover, we do not believe that the time between the stabbing and her statement afforded her time to fabricate. Rather, we find that the events were sufficiently startling as to produce an unreflecting statement. (*People v. Gacho* (1988), 122 Ill. 2d 221, 522 N.E.2d 1146.) Finally, the statement related to the occurrence. Thus, we find that the trial court properly admitted Campbell's statement under the spontaneous declaration exception to the hearsay rule.

Defendant next contends that the prosecutor's misstatement during closing argument denied him a fair trial. The prosecutor stated, "The office asked Alfreda, who stabbed you? You did hear from Alfreda. She told you Frank did it, Frank Burgos." Defense counsel objected, noting that the evidence was that Campbell said, "Frank." The court overruled the objection, stating that it was argument.

■ Generally, assumptions and statements of fact not based on evidence in the case may not be argued to the jury, and may be deemed prejudicial to the accused. (*People v. Eddington* (1984), 129 Ill. App. 3d 745, 473 N.E.2d 103.) Nonetheless, an argument based on facts appearing in proof or on legitimate inferences from those facts is proper. (*People v. Johnson* (1984), 122 Ill. App. 3d 532, 461 N.E.2d

585.) Moreover, the character and scope of argument to the jury is left largely to the trial court. The trial court is in a better position than a reviewing court to determine the prejudicial effect of a remark made during argument, and its ruling should be upheld unless the court clearly has abused its discretion. *People v. Smothers* (1973), 55 Ill. 2d 172, 302 N.E.2d 324.

■ We believe that the prosecutor's comment was a legitimate inference from the facts and circumstances proved during trial. Defendant's apartment was covered with blood and a trail of blood led from that apartment to where Campbell was found. Campbell's fingerprints were on a cigarette package found in defendant's apartment, and her sister last had seen Campbell with defendant the evening prior to the murder. Moreover, both Rodgers and Dr. Porter identified defendant as the man they observed coming down the hall as they attended to Campbell. In light of these facts, the prosecutor's comment was permissible argument and amounted to a legitimate inference from the evidence presented at trial.

Defendant finally contends that he was not proved guilty of murder beyond a reasonable doubt. He maintains that the circumstantial evidence presented by the State was insufficient to exclude every reasonable hypothesis of evidence and to establish beyond a reasonable doubt that defendant committed the crime.

■ In order to prove defendant guilty of murder, the State must show that defendant, without lawful justification, intentionally or knowingly killed Campbell, or committed an act which created a strong probability of death or great bodily harm. (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a).) Whether a defendant has been proved guilty beyond a reasonable doubt is a matter for the trier of fact and its decision will not be disturbed on review unless the evidence is so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt. (*People v. Martin* (1979), 80 Ill. App. 3d 281, 399 N.E.2d 265.) A conviction for murder, of course, may be based on circumstantial evidence. And it is sufficient if all the evidence taken as a whole satisfies the trier of fact of defendant's guilt beyond a reasonable doubt. *People v. Williams* (1977), 66 Ill. 2d 478, 363 N.E.2d 801.

■ In the present case, we cannot say the jury's conclusion that defendant was guilty beyond a reasonable doubt is so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt. Campbell was seen with defendant the night before her murder, and she was found with multiple stab wounds down the hall from defendant's apartment. A trail of blood led from where she was found to defendant's apartment and a large amount of blood was

found in defendant's apartment along with a bloodstained hammer. An autopsy revealed that although Campbell died of multiple stab wounds, she had received a blow to her right cheek which was consistent with a blow from a hammer. When asked who stabbed her, Campbell replied, "Frank." Her fingerprints were found in defendant's apartment. Two witnesses identified defendant as the man who walked down the hallway in a wavering fashion as they attended Campbell. Defendant fled the scene and was located 3½ years later in New York. (See *People v. Lester* (1981), 102 Ill. App. 3d 761, 430 N.E.2d 358 (court may view a defendant's flight as consciousness of guilt).) Finally, Bishop, defendant's former girlfriend, testified that defendant had attacked her in a similar manner 11 months prior to the attack on Campbell.

The totality of this evidence was sufficient to permit the jury to conclude that defendant was guilty beyond a reasonable doubt of Campbell's murder. We will not disturb that determination.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN, P.J., and LaPORTA, J., concur.