THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANA D. SIMMONS, Defendant-Appellant.

Second District   No. 2—00—0695

Opinion filed July 29, 2003.

186

G. Joseph Weller and Kim M. DeWitt, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (Stephen E. Norris and Patrick D. Daly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE HUTCHINSON delivered the opinion of the court:

In 1996 a jury convicted defendant, Dana D. Simmons, of the offense of first-degree murder (720 ILCS 5/9—1(a)(1) (West 1994)). The trial court imposed a sentence of 80 years' imprisonment. Defendant appealed, and this court reversed his conviction and remanded the cause for a new trial. See *People v. Simmons*, No. 2—96—1077 (August 24, 1998) (unpublished order pursuant to Supreme Court Rule 23). In February 2000 defendant was retried, and a jury again convicted defendant of the offense of first-degree murder; the trial court sentenced defendant to 80 years' imprisonment. Following the trial court's denial of his posttrial motion, defendant timely appealed. On appeal, defendant contended that he received the ineffective assistance of counsel, challenged the trial court's authority to impose an extended-term sentence, and claimed that the trial court abused its discretion in its imposition of an 80-year sentence. This court affirmed. See *People v. Simmons*, 331 Ill. App. 3d 416 (2002).

Defendant petitioned our supreme court for leave to appeal. In denying defendant's petition, our supreme court entered an order directing this court to vacate our judgment and to reconsider the case in light of *People v. Swift*, 202 Ill. 2d 378 (2002). See *People v. Simmons*, 202 Ill. 2d 693 (2003). Since *Swift* was decided, however, our supreme court issued *People v. Thurow*, 203 Ill. 2d 352 (2003), and a supplemental opinion in *People v. Crespo*, 203 Ill. 2d 335 (2001), which we will also utilize to reconsider defendant's case. Pursuant to our supreme court's directive, we vacate our decision (*Simmons*, 331 Ill. App. 3d 416) and enter this opinion in its stead.

Just before defendant's trial commenced, his counsel moved *in limine* for the trial court to enter an order prohibiting the State from referring to Sebastian Patterson, a witness, as "Slick" during its cross-examination of him. The trial court conducted a hearing, and defense counsel clarified that he was not requesting that the State be forbidden from referring to Patterson or other witnesses by their nicknames during its opening statement and closing argument but that the State should not be permitted to use the nickname repeatedly so as to make it appear to demean the witness and ultimately prejudice defendant. The trial court found that the nickname "Slick" and the other nicknames were relevant to the identification of witnesses to and participants in the matter but granted the motion, which prohibited the State from constantly referring to the witnesses by their nicknames during its examination or cross-examination of those witnesses.

The record reflects that on March 10, 1995, Bocci Wills (the victim)

went to the Amoco gas station located on West State Street in Rockford. He was driving a black Bronco and accompanied by two friends, Amavlee Macklin and Keonta Burnell. When they arrived, Wills parked by a pay phone and he and Macklin exited the vehicle. Wills walked toward the gas station and made eye contact with defendant. Defendant was at the gas station with two friends, Rodney Kinds and Sebastian Patterson. A few minutes later, a physical altercation erupted between Wills and defendant. Wills struck defendant in the face, causing his face to bleed. They fought for several minutes while others watched. A gun fell from defendant's coat to the ground, and Patterson picked up the gun.

Defendant and Wills continued to fight. Defendant called for help, and Kinds retrieved a 9-millimeter gun from his car and began firing toward Wills. Patterson took the gun he had and held it against Macklin and warned him not to move. Wills began running toward the Bronco, which Burnell had driven to the area of the fight scene. Wills appeared to have been hit in the legs by gunfire and fell to the ground. At this point defendant appeared to have a gun; he admittedly shot at Wills at least four times. Wills suffered a total of 10 gunshot wounds but died as a result of a single gunshot wound to the back of his head. The State's witnesses testified that defendant stood over the victim and shot him as he lay on the ground. Defendant, Patterson, and Kinds fled the scene.

Defendant left the state and traveled for five months until he and Kinds were arrested in Milwaukee, Wisconsin. Patterson had previously surrendered himself to the police. At the time of his arrest, defendant admitted that he had used a 9-millimeter handgun to shoot at Wills. Police found evidence at the scene that at least 17 shots had been fired.

The parties presented their closing arguments, the trial court instructed the jury, and the jury retired to deliberate. The jury found defendant guilty of the offense of first-degree murder, and the trial court entered judgment on the verdict. Defendant filed a posttrial motion, and, following a hearing, the trial court denied the motion. Proceeding to the sentencing phase, the trial court reflected upon the factors in aggravation. It found that defendant had a substantial history of criminal conduct, including a juvenile record, a misdemeanor offense of resisting a police officer, and a felony offense of aggravated battery. The trial court commented that the State presented compelling evidence that defendant fired the weapon that killed the victim in an execution-style manner while the victim was attempting to flee, had fallen, and was wounded. The trial court found that the offense was accompanied by exceptionally brutal and heinous behavior indica-

tive of wanton cruelty and determined that defendant was eligible for extended-term sentencing. The trial court sentenced defendant to a term of 80 years' imprisonment. The trial court denied defendant's motion to reconsider his sentence, and defendant timely appeals.

■ Defendant contends that a combination of prosecutorial misconduct and the ineffective assistance of counsel deprived him of a fair trial. He argues that the State committed numerous errors during its closing and rebuttal arguments and that the cumulative effect of defense counsel's failure to object to the errors constituted ineffective assistance. Defendant concedes that the allegations of prosecutorial misconduct were not raised in his posttrial motion. Generally, to preserve an issue for review, a defendant must both make a contemporaneous objection and include the alleged error in a posttrial motion. See, *e.g.*, *People v. Banks*, 161 Ill. 2d 119, 143 (1994). By failing to do so, the issue is waived on appeal. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Our supreme court has consistently recognized that the failure to raise an issue in a written motion for a new trial prevents raising the issue on appeal. See *People v. Towns*, 174 Ill. 2d 453, 464 (1996). However, defendant requests that we consider this issue under the plain-error doctrine, and we will do so. See 134 Ill. 2d R. 615(a); *Towns*, 174 Ill. 2d at 464, citing *People v. Carlson*, 79 Ill. 2d 564 (1980) (stating that, under the plain-error doctrine, courts may address a waived issue if the evidence is closely balanced or if the error affects substantial rights).

Defendant first argues that the prosecutor's closing argument and rebuttal argument denied him the right to a fair trial. Specifically, defendant argues that the prosecutor posited that the reason the fight between Wills and defendant came about was likely very trivial; the prosecutor reminded the jury that it was allowed to hear the victim's last moments on the 911 audiotape; the prosecutor recounted the medical examiner's testimony where one of the prosecutors served as a model regarding the trajectory of the bullets upon the victim; the prosecutor asked for a verdict of first-degree murder because defendant's conduct deserved nothing less than first-degree murder; the prosecutor referred to Patterson as "Slick" in an alleged violation of a motion *in limine*; and the prosecutor argued in the rebuttal argument that a fistfight was insufficient provocation to result in gunfire.

■ We note that a prosecutor is allowed a great deal of latitude in giving a closing argument. *People v. Cisewski*, 118 Ill. 2d 163, 175 (1987); *People v. Siefke*, 195 Ill. App. 3d 135, 144 (1990). The trial court's determination of the propriety of the closing argument generally will be followed on appeal absent a clear abuse of discretion. *Cisewski*, 118 Ill. 2d at 175. Arguments and statements based upon

the facts in evidence, or upon reasonable inferences drawn therefrom, are within the scope of proper argument. *People v. Terry*, 99 Ill. 2d 508, 517 (1984). In reviewing allegations of prosecutorial misconduct, the closing arguments of both the State and defense counsel must be examined in their entirety, and the allegedly improper remarks must be placed in their proper context. *Cisewski*, 118 Ill. 2d at 175-76. Even where certain remarks are found to be improper, they will not be considered reversible error unless they constitute a material factor in the defendant's conviction or result in substantial prejudice to the accused such that the verdict would have been different had they not been made. *Terry*, 99 Ill. 2d at 517.

■ After reading the prosecutor's and defense counsel's closing arguments in their entirety, we hold that the prosecutor's remarks did not constitute a material factor in defendant's conviction or result in substantial prejudice such that the verdict would have been different had the comments not been made. The prosecutor's remarks were all reasonable inferences based on the testimony and evidence presented. The prosecutor's reference to Patterson as "Slick" during his closing argument was previously allowed by the trial court and defense counsel and was not a violation of the motion *in limine*. In rebuttal, the prosecutor argued in response to defense counsel's argument regarding provocation. Defense counsel urged the jury to consider the mitigating factors before rendering its verdict, and the prosecutor rebutted defense counsel's argument. The prosecutor argued that the fight between the victim and defendant was a "one-on-one fair fight" that started with a punch and that the fight had not escalated to the point where using a gun was justified, a reasonable inference based upon the testimony and evidence presented. We also note that the trial court instructed the jury that opening statements and closing arguments were not evidence. See *People v. Reeves*, 228 Ill. App. 3d 788 (1992). Therefore, defendant suffered no error or prejudice resulting from the prosecutor's closing argument and rebuttal argument.

■ Defendant also argues that defense counsel's failure to object during the prosecutor's closing and rebuttal arguments prejudiced his right to a fair trial and, as a result, he received the ineffective assistance of counsel. Generally, to establish the ineffective assistance of counsel, a defendant must show both that counsel's representation fell below an objective standard of reasonableness and that a reasonable probability exists that, but for the error, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); *People v. Albanese*, 104 Ill. 2d 504 (1984) (adopting *Strickland*). However, we may resolve a claim of the ineffective assistance of counsel by reaching only the prejudice

component, for the lack of prejudice renders irrelevant the issue of counsel's performance. *People v. Towns*, 174 Ill. 2d 453, 469 (1996), citing *People v. Erickson*, 161 Ill. 2d 82, 90 (1994).

■ Generally, decisions such as what matters to object to and when to object are matters of trial strategy. *People v. Pecoraro*, 175 Ill. 2d 294, 327 (1997). A decision that involves a matter of trial strategy will typically not support a claim of ineffective representation. *People v. Hobley*, 159 Ill. 2d 272, 305 (1994), citing *People v. Flores*, 128 Ill. 2d 66, 106 (1989). Moreover, reviewing courts have repeatedly held that the prosecutor must be given wide latitude in her or his ability to argue before the jury. *People v. Page*, 156 Ill. 2d 258 (1993).

■ Defendant has failed to establish that a reasonable probability existed that the outcome of his trial would have been different had defense counsel objected to any comments made during the prosecutor's closing arguments. Nothing in the record indicates that the result of the proceeding would have been different had defense counsel engaged in such strategies. Because no prejudice resulted, it cannot be said that the trial strategy of defense counsel denied defendant the effective assistance of counsel. Accordingly, we hold that trial counsel was not ineffective.

■ Defendant also contends that the cumulative effect of the prosecutor's closing and rebuttal arguments prejudiced the jury and denied him a fair trial. In instances where individual errors committed by a trial court do not merit reversal alone, the cumulative effect of the errors may deprive a defendant of a fair trial. *People v. Batson*, 225 Ill. App. 3d 157, 169 (1992). In such cases, due process and fundamental fairness require that the defendant's conviction be reversed and the cause remanded for a new trial. *Batson*, 225 Ill. App. 3d at 169. In the present case, we determined that the alleged instances of misconduct were not erroneous and did not result in prejudice to defendant. Accordingly, we find that the cumulative effect of the alleged errors at trial did not deprive defendant of a fair trial.

Defendant next challenges the trial court's authority to impose an extended-term sentence based upon the Supreme Court ruling announced in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). The *Apprendi* Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. In the present case, the trial court sentenced defendant to an extended term of 80 years' imprisonment after finding that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.

See 730 ILCS 5/5—8—1(a)(1)(a), 5—8—2(a)(1), 5—5—3.2(b)(2) (West 1994).

This court has visited and revisited the *Apprendi* decision. See *People v. Tenney*, 329 Ill. App. 3d 430 (2002); *People v. Rivera*, 333 Ill. App. 3d 1092 (2001); *People v. Chanthaloth*, 318 Ill. App. 3d 806 (2001); *People v. Joyner*, 317 Ill. App. 3d 93 (2000). Since then, however, our supreme court has decided three cases that have provided us with guidance concerning the issue now facing us on appeal.

In *People v. Swift*, 202 Ill. 2d 378, our supreme court considered the *Apprendi* decision and established the general rule that, "for purposes of *Apprendi* analysis, the 'sentencing range' for first degree murder in Illinois is 20 to 60 years' imprisonment." *Swift*, 202 Ill. 2d at 392. In *People v. Thurow*, 203 Ill. 2d 352, our supreme court considered whether an *Apprendi* violation could be examined under a harmless-error or plain-error analysis. In deciding that an *Apprendi* violation could be examined under either analysis depending on the circumstances, the *Thurow* court relied on *United States v. Cotton*, 535 U.S. 625, 152 L. Ed. 2d 860, 122 S. Ct. 1781 (2002), wherein the Supreme Court utilized a plain-error analysis to determine whether an *Apprendi* violation seriously affected " 'the fairness, integrity, or public reputation of judicial proceedings.' " *Thurow*, 203 Ill. 2d at 362, quoting *Cotton*, 535 U.S. at 632-33, 152 L. Ed. 2d at 868-69, 122 S. Ct. at 1785-86.

In *People v. Crespo*, 203 Ill. 2d 335, our supreme court addressed the *Apprendi* issue in a supplemental opinion upon denial of rehearing. In *Crespo*, the evidence reflected that the defendant restrained the victim by her hair and attacked the victim repeatedly with an eight-inch kitchen knife, using such force as to bend the blade at a 90-degree angle. A jury convicted the defendant of, *inter alia*, first-degree murder. At sentencing, the trial court found that the murder was committed in a brutal and heinous manner indicative of wanton cruelty, and it sentenced the defendant to an extended term of 75 years' imprisonment. Our supreme court recognized the *Apprendi* sentencing violation, and, because the defendant did not object to the violation at trial, the court applied the plain-error test. *Crespo*, 203 Ill. 2d at 347. The *Crespo* court determined that there would have been "no doubt that a jury, presented with these facts, would have found that the crime was committed in a brutal and heinous manner, indicative of wanton cruelty." *Crespo*, 203 Ill. 2d at 348. In upholding the defendant's extended-term sentence, the court concluded that the *Apprendi* violation did not "seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings," and that the defendant failed to show that the error was prejudicial. *Crespo*, 203 Ill. 2d at 348-49.

In the present case, the trial court found that defendant's conduct in committing the murder was accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty, and it sentenced defendant to an extended term of 80 years' imprisonment. For purposes of an *Apprendi* analysis, this sentence was 20 years greater than the sentencing range for first-degree murder in Illinois. See *Swift*, 202 Ill. 2d at 392. Therefore, defendant's sentence was imposed in violation of the rule announced in *Apprendi*. See *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. However, in light of *Thurow*, we may now consider whether this violation constituted harmless or plain error. See *Thurow*, 203 Ill. 2d at 362-63. Because defendant made no timely objection at trial, we apply a plain-error analysis to determine whether the jury's failure to determine that defendant's conduct was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty seriously affected "the fairness, integrity, or public reputation of judicial proceedings." See *Thurow*, 203 Ill. 2d at 362, quoting *Cotton*, 535 U.S. at 632-33, 152 L. Ed. 2d at 868-69, 122 S. Ct. at 1785-86; see also 134 Ill. 2d R. 615(a). Moreover, pursuant to *Crespo*, defendant's conviction will stand unless he establishes that the error was prejudicial. See *Crespo*, 203 Ill. 2d at 347-48.

■ Based on our review of the record in the present case, we determine that, under the plain-error analysis utilized in *Crespo*, defendant has failed to demonstrate that he was prejudiced by the absence of a jury finding that the murder he committed was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. See also *People v. Vida*, 339 Ill. App. 3d 115 (2003). The evidence reflected that defendant and the victim, Wills, were engaged in a one-on-one fight while others watched. Defendant's firearm fell from his coat. When defendant called for assistance, Kinds retrieved a firearm from his car and began firing. Wills then retreated. He began running toward the Bronco but was apparently wounded and fell to the ground. While Wills lay wounded, defendant stood over him and shot him. Although Wills suffered from multiple gunshot wounds, he died of a single gunshot wound to the back of his head. The evidence clearly established that defendant killed the wounded victim in an execution-style manner. We have no doubt that the jury would have found that the murder defendant committed was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. Based on the foregoing, we determine that the jury's failure to so find did not seriously affect "the fairness, integrity, or public reputation" of these judicial proceedings. See *Thurow*, 203 Ill. 2d at 362, quoting *Cotton*, 535 U.S. at 632-33, 152 L. Ed. 2d at 868-69,

122 S. Ct. at 1785-86. Accordingly, because defendant cannot show that the error was prejudicial, his conviction and sentence will stand. See *Crespo,* 203 Ill. 2d at 347-48.

■ Last, defendant contends that the trial court abused its discretion when it sentenced him to 80 years' imprisonment. Defendant asks this court to reconsider the length of his sentence on the grounds that Wills was the initial aggressor; defendant's response in the present case was shaped by a prior altercation in which he was shot and suffered the loss of one eye; and he was exposed to a dysfunctional family environment.

The trial court has broad discretionary powers in imposing a sentence. *People v. Stacey,* 193 Ill. 2d 203, 209 (2000). The trial court's sentencing decision is entitled to great deference on review. *Stacey,* 193 Ill. 2d at 209. The trial court is granted such deference because the trial court is generally in a better position than the reviewing court to determine the appropriate sentence. The trial judge has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *People v. Streit,* 142 Ill. 2d 13, 19 (1991); see also *People v. Golden,* 323 Ill. App. 3d 892, 905 (2001). The reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently. *Streit,* 142 Ill. 2d at 19.

In the present case, defendant does not contend that the trial court failed to consider the aforementioned statutory mitigating factors. See 730 ILCS 5/5—5—3.1(a)(7) (West 2000). Rather, defendant argues that, if this reviewing court considers the mitigating factors, we would clearly find that an 80-year extended-term sentence was an abuse of the trial court's discretion. However, this is not our standard of review. See *Streit,* 142 Ill. 2d at 19. The trial court has a statutory duty to consider evidence in mitigation and aggravation in crafting a just sentence. See 730 ILCS 5/5—5—3.1, 5—5—3.2 (West 2000). Our review of the record reflects that the trial court did so at the aggravation and mitigation phase of the trial. The trial court considered the mitigating factors and weighed those factors against the severity of defendant's crime, which included a fatal gunshot wound to the back of the head of an unarmed and wounded victim. Because the sentence imposed by the trial court was within the bounds of that court's discretion, there is no reason to disturb that sentence based upon the totality of the record and circumstances presented to this court. Accordingly, we affirm defendant's conviction and sentence.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

McLAREN and CALLUM, JJ., concur.