THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM BATSON *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 1—89—0264, 1—89—0365 cons.

Opinion filed January 29, 1992.

Randolph N. Stone, Public Defender, of Chicago (Beth I. Solomon and Vicki Rogers, Assistant Public Defenders, of counsel), for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Following a jury trial, defendants William Batson and Arkee Chaney were found guilty of armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 18—2) and aggravated battery (Ill. Rev. Stat. 1987, ch. 38, par. 12—4). Defendant Batson was also found guilty of unlawful use of a weapon. (Ill. Rev. Stat. 1987, ch. 38, par. 24—1.) Defendant Batson was sentenced to concurrent terms of 20 years' imprisonment for armed robbery, five years' imprisonment for aggravated battery, and four years' imprisonment for unlawful use of a weapon. Defendant Chaney was sentenced to concurrent terms of natural life imprisonment for armed robbery pursuant to the Habitual Criminal Act (Ill. Rev. Stat. 1987, ch. 38, par. 33B—1), and 10 years' imprisonment for aggravated battery.

The following issues are before this court for review: (1) whether the trial court erred when it admitted Joanne Hunter's testimony, and permitted her testimony to be emphasized in the State's closing argument; (2) whether the prosecutor's remarks during opening statement and closing argument deprived defendants of a fair trial; and (3) whether the cumulative effect of the trial court's admission of Joanne Hunter's testimony and the prosecutor's subsequent arguments based upon her testimony prejudiced the jury and denied defendants a fair trial. We affirm.

Defendants objected to three remarks made by the prosecutor during the State's opening statement. First, defendants objected to the following statement:

"Good morning ladies and gentlemen. *Cab Driver Slashed with Knife During Armed Robbery*, that's a headline we see in the news papers pretty often \*\*\*. \*\*\*

That's what these two individuals did on November 22, 1987."

Next, the defense objected to the prosecutor's statement that "Alia [*sic*] Batson, the defendant's wife opened the back door while some officers went in the front door."

Defendants also contend that they were prejudiced by the following remark:

"[Wilbert Jackson is] going to have to tell you that he earns a living driving a cab on the southside of Chicago at night.

He usually works from 7:00 p.m. to 7:00 a.m. \*\*\*. He's going to tell you he's 40 years old."

Wilbert Jackson testified for the State. Jackson told the court that he was a taxicab driver who worked for the Fleet Cab Service, also known as the Boon Cab Company. Jackson testified that he worked between the hours of 7 p.m. and 7 a.m. Jackson stated that he was on duty and parked on South Michigan Avenue near 118th Street at 12:30 a.m. on November 22, 1987. Jackson testified that two men, whom he later identified in court as defendants, approached the cab stand. Jackson told the court that he then drove to the cab stand and beckoned Batson and Chaney.

Jackson testified that Batson and Chaney then entered the cab. Jackson stated that Batson sat directly behind him, while Chaney sat behind the passenger seat. Jackson maintained that Chaney told him to drive to Altgeld Gardens. Jackson told the court that he requested the $4 cab fare in advance, and that Batson and Chaney gave him the fare.

Jackson testified that when he reached Altgeld Gardens, he refused to drive defendants into the parking lot, and instead stopped the cab in the street. Jackson further testified that defendant Chaney held a butcher knife over his shoulder and instructed him to turn off the engine. Jackson testified that Chaney said, "We don't want to hurt you, just give us the money." Jackson maintained that Batson responded by saying, "Kill [him]." Jackson told the court that Chaney reached over the seat and attempted to turn off the ignition. Jackson testified that he then grabbed the knife, and that he and Batson struggled for the knife. As a result of this altercation, Jackson re-

ceived numerous cuts on his hands. Jackson testified that Batson and Chaney then pushed him out of the cab onto the pavement causing his artificial leg to break. Jackson stated that while he was lying on the ground, Batson sat on his abdomen and Chaney kicked him in the face. Jackson became disoriented as a result of the beating, and Batson and Chaney left him lying on the ground. Jackson eventually got back into the cab and drove himself to Roseland Community Hospital. While driving, Jackson noticed that his keys and his wallet which contained $80 were missing.

Joanne Hunter testified for the State and corroborated Jackson's testimony. Hunter was an employee of GEJ Security and was assigned to work as a "security officer" at Altgeld Gardens. Hunter testified that on November 23, 1987, she had a conversation with a woman who identified herself as Olleah Batson. Hunter testified as follows:

"THE STATE: Once again, you had a conversation with a female on November 23, 1987 at approximately 5:15, is that correct?

HUNTER: Correct.

Q. Did that person identify herself?

A. Yes.

Q. What name did she identify herself by?

A. As Alia [sic] Batson.

Q. Now, did you have a conversation with her after she came in?

A. Yes.

Q. How long did that conversation last?

A. No longer than 20 minutes.

Q. Who was present for that conversation?

A. My partner, Officer Eugene Irving.

Q. During that conversation did you ask the person who identified herself as Alia Batson any questions?

A. Yes.

Q. Do you recall the first question that you asked her?

A. The last thing I asked her was how did she know they had committed a robbery.

THE DEFENSE: Objection.

THE COURT: Overruled.

Q. How did she know there had been a robbery committed?

A. Right, —from by a cab driver, yes.

Q. Did you ask her any other questions?

A. Yes.

162

Q. What was the next question that you asked her?
A: I asked her [what time it happened].
THE DEFENSE: Judge, could I continue my objection?
THE COURT: Your objection is noted, and it is overruled.
Q. What was the next question you asked her?
A. The next question I asked her did she know the name of the cab company?
Q. When you asked her these questions, did she give answers?
A. Yes."

Hunter further stated that on November 24, 1987, the day after she spoke to Olleah Batson, she looked through a neighborhood community telephone directory for the telephone numbers of cab companies located in the neighborhood. Hunter testified that she began to call each cab company listed in alphabetical order. Hunter told the court that she asked the people she spoke to whether one of their drivers had been robbed in Altgeld Gardens on the night of November 22, 1987. She testified that she received an affirmative answer to this question from an employee of Boon Cab Company and that the employee referred her to Wilbert Jackson.

Hunter stated that she then telephoned Jackson and asked him if he was the individual who was robbed on November 22. Hunter testified that Jackson answered her question in the affirmative. Hunter further stated that Jackson gave her the name of Detective Thomas Krippel, who was in charge of investigating the robbery. Her testimony continued:

"THE STATE: Did you tell Detective Krippel who you had talked to?
HUNTER: Yes.
Q. Who did you tell Detective Krippel that you had talked to?
A. I had talked to Wilbert Jackson, and also I had talked to Alia [sic] Batson.
Q. And during your conversation with Detective Krippel did you give him any names?
A. Yes.
Q. What names did you give Detective Krippel.
A. Billy Batson.
THE DEFENSE: Objection.
THE COURT: Overruled.
A. And Arkee Chaney."

Hunter concluded her testimony by stating that on December 4, 1987, she telephoned Detective Krippel again and told him that she was assigned to evict the tenants in the apartment leased to Olleah Batson and that "if he wanted the guys, *** he better come out."

Detective Krippel testified that he arrived at Altgeld Gardens 10 to 15 minutes after speaking to Hunter and entered a residence there where he found defendants and arrested them. That same day, the victim identified defendants as his assailants in a lineup.

The State also called Minnie Clark as a witness. Clark testified that Olleah Batson is defendant Batson's wife and defendant Chaney's sister.

During closing arguments, defendants objected to four comments made by the prosecutor. First, defendants objected to the following remark:

"Just like Joanne Hunter you now know who robbed at knifepoint that cab driver back in November of 1987."

The prosecutor expanded upon this statement in his rebuttal argument:

"Mr. Bertucci talked about Joanne Hunter, the heroine of this case. She is kind of like the Jessica Fletcher on that t.v. show, 'Murder She Wrote,' someone who is relentless, someone who wants to get to the bottom of the matter, someone who wants to find out the truth, and putting somebody in the hands of the police, someone who is guilty of armed robbery.

She starts out having a conversation with his wife who is Defendant Chaney's sister. And what do you think she told Joanne Hunter on that date—
***

What do you think—what information do you think she gave Joanne Hunter about that armed robbery? Do you think she was able to give Joanne Hunter the identity of the two individuals?"

Next, defendants objected to the manner in which the prosecutor defined reasonable doubt for the jury:

"Now, in terms of the burdens in this case, the burden of proof and burden beyond a reasonable doubt, that the state, that Mr. Bertucci and I have on behalf of the Cook County State's Attorney gladly accept. The burden of proof beyond a reasonable doubt is present in every case.
***

Every criminal case that is in the system that is the law. And it applies only to the elements; it doesn't apply to how

many times Wilbert Jackson was hit. It doesn't apply to the fact that there was no weapon recovered. It doesn't apply to the fact that no proceeds were recovered. What it applies to is did they, did these two individuals, rob Wilbert Jackson at knife point; did they beat him. Those are the elements that you will be required to find, and as I said elements of proof beyond a reasonable doubt ***."

Defendants also objected to the following statement:

"What they try to do to get the attention of everyone away from these two defendants—

***

—they tried to put Wilbert Jackson on trial. He had an embarrassing moment on trial. He was caught with a weapon. It is kind of unfortunate that he didn't have a weapon that day to protect himself from these two individuals. What do they talk about, the quality of the evidence, the quality of the victim, the opportunity he had to observe."

Finally, defendants objected to the following comment:

"It is unfortunate that people in the City of Chicago are scared to go to work and work night hours. That's because of individuals like these defendants.

***

You as jurors sitting in this case have the power to send a message to the community that we do not tolerate such violent criminal behavior. You have the power to tell these two defendants sitting right here that they can't get away robbing cab drivers at night."

After closing arguments, defendant Chaney was found guilty of armed robbery and aggravated battery and sentenced to concurrent terms of natural life imprisonment for armed robbery, and 10 years' imprisonment for aggravated battery. Defendant Batson was found guilty of armed robbery, aggravated battery, and unlawful use of a weapon. Defendant Batson was sentenced to concurrent terms of 20 years' imprisonment for armed robbery, five years' incarceration for aggravated battery, and four years' imprisonment for unlawful use of a weapon.

Defendants first contend that they were denied due process of law because inadmissible hearsay testimony from Hunter was admitted during the trial and emphasized in the State's closing argument. The State maintains that Hunter's testimony did not constitute hearsay, because her statements addressed her own conduct and because her testimony was elicited to demonstrate her investigatory procedure

and was not offered for the truth of the matter asserted. In the alternative, if we find for defendants on this issue, the State argues that the court's admission of Hunter's testimony constituted harmless error.

Hearsay is an out-of-court statement made for the truth of the matter asserted. (*People v. Hunter* (1984), 124 Ill. App. 3d 516, 528, 464 N.E.2d 659, 671.) With limited exceptions, hearsay is inadmissible because the party against whom the statements are offered cannot cross-examine the declarant. (*Hunter*, 124 Ill. App. 3d at 529, 464 N.E.2d at 671.) A witness may testify that he had a conversation with an individual, and that he subsequently acted thereon, so long as the witness does not reveal the substance of the conversation. Such testimony is not hearsay because it is based upon the witness' personal knowledge and it is admissible for the limited purpose of explaining the witness' investigatory procedure. (*People v. White* (1985), 134 Ill. App. 3d 262, 282, 479 N.E.2d 1121, 1134; *Hunter*, 124 Ill. App. 3d at 529, 464 N.E.2d at 671; *People v. Daliege* (1976), 40 Ill. App. 3d 706, 709, 352 N.E.2d 247, 250.) Testimony of this nature is admissible even when the trier of fact may infer therefrom that the information the witness obtained motivated his subsequent conduct. *People v. White* (1989), 192 Ill. App. 3d 55, 60-61, 548 N.E.2d 421, 425; *Hunter*, 124 Ill. App. 3d at 529, 464 N.E.2d at 671.

■ Therefore, we find that Hunter's testimony concerning her conversations with Olleah Batson and Detective Krippel did not constitute hearsay. Hunter's testimony concerned an investigatory procedure and was based upon her own personal knowledge. Hunter testified as to what questions she asked Olleah Batson, and she told the trial court that Olleah Batson responded to her questions. Hunter did not testify as to the substance of Olleah Batson's replies. Furthermore, when Hunter testified concerning her conversation with Detective Krippel, she merely stated that she gave Detective Krippel the names "Billy Batson" and "Arkee Chaney." Hunter never testified that she told Krippel that Olleah Batson gave her defendants' names.

■ We also find that the trial court erred when it admitted comments made by the prosecutor during closing argument concerning Hunter's conversation with Olleah Batson. The trial court's admission of these remarks, however, constituted harmless error.

Defendants, in reliance upon *People v. White* (1989), 192 Ill. App. 3d 55, 548 N.E.2d 421, maintain that during closing argument, the prosecutor disclosed the substance of the conversation between Hunter and Olleah Batson and that he expanded the limited purpose for which Hunter's testimony was admitted.

As a general rule, a prosecutor has wide latitude during closing argument, and his comments may not be labelled improper if they are based upon facts in the record or reasonable inferences drawn therefrom. (*People v. Moya* (1988), 175 Ill. App. 3d 22, 24, 529 N.E.2d 657, 659.) In *White*, however, we found that the prosecutor's statement during closing argument in which he emphasized the fact that the police obtained the defendant's name from an alleged accomplice was improper. (*White*, 192 Ill. App. 3d at 61, 548 N.E.2d at 425.) The *White* court reasoned that the prosecutor was "taking improper advantage of the admissibility of testimony by a police officer to explain his investigatory procedure, only to use that testimony, once it is admitted, \*\*\* impermissibly \*\*\* in closing argument." (*White*, 192 Ill. App. 3d at 61, 548 N.E.2d at 426.) The court held that the remarks were improper and prejudicial to defendant, but that the jury's verdict would not have been different in light of the overwhelming evidence of the defendant's guilt. *White*, 192 Ill. App. 3d at 61-62, 548 N.E.2d at 426.

In the instant case, the prosecutor stated during the State's closing argument that Hunter obtained defendants' names from Olleah Batson. Upon applying *White* to the instant case, we find that the prosecutor's comments were improper. Defendants, however, were not denied a fair trial in light of the overwhelming evidence of their guilt. For the aforementioned reasons, we hold that defendants were not denied due process of law.

Next, defendants contend that the prosecutor's remarks during opening statement and closing argument deprived them of a fair trial. The State maintains that the prosecutor's statements were either based upon the evidence, or were invited responses to defense counsel's arguments. In the alternative, if we should find for defendants on this issue, the People maintain that any error was harmless due to the overwhelming evidence against defendants.

■ Defendants first argue that they were denied a fair trial because the prosecutor made three prejudicial remarks during his opening statement. Defendants first contend that the prosecutor's remark during opening statement referring to a fictitious newspaper headline, *Cab Driver Slashed with Knife During Armed Robbery*, was inflammatory and was not based upon the evidence. We find that defendants waived their right to review of this issue on appeal because they failed to raise this issue in either of their post-trial motions. In *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130, our supreme court held that "[b]oth a trial objection *and* a written post trial motion raising the issue are required for alleged errors that could

have been raised during trial." (Emphasis in original.) Accordingly, this issue may not be considered on review.

■ Second, defendants contend that they were prejudiced when the prosecutor described information about the victim's occupation, work hours and age. We noted above that a prosecutor has wide latitude during closing argument, and that his comments are not improper if the remarks are based upon the facts in the record or reasonable inferences drawn therefrom. (See *People v. Moya* (1988), 175 Ill. App. 3d 22, 24, 529 N.E.2d 657, 659.) In the present case, the prosecutor's description of the victim was proper because it was supported by the victim's testimony. Jackson testified as follows:

"THE STATE: How old are you Mr. Jackson?

JACKSON: I am 40.

Q. Do you live in Chicago?

A. Yes.

Q. Are you employed?

A. Yes.

Q. What is your occupation?

A. I am a cab driver.

Q. How long have you been a cab driver, Mr. Jackson?

A. For about ten years.

Q. How many days a week do you work?

A. I work seven days a week.

Q. What are your hours?

A. From 7:00 in the evening until 7:00 in the morning."

We find that the prosecutor's comment did not prejudice the jury because the remark was directly supported by testimony at trial.

■ Defendants' final contention concerning the prosecutor's opening statement focuses on the prosecutor's remark that "Alia [*sic*] Batson, the defendant's wife, opened the back door while some officers went in the front door." We find that defendants have waived appellate review of this argument because the alleged error was not objected to at trial, or raised in either of defendants' post-trial motions. See *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d at 1129-30.

■ Defendants' second argument concerning prosecutorial remarks focuses on three comments made during the State's closing argument. The first comment made during the State's closing argument which defendants object to is the prosecutor's statement defining reasonable doubt. The remark which defendants object to in the present case is analogous to the comment made by the prosecutor in *People v.*

*Harris* (1989), 129 Ill. 2d 123, 544 N.E.2d 357. In *Harris*, the prosecutor made the following statement during closing argument:

> "[The reasonable doubt test is the] 'same standard that's been used in this court room, in all the court rooms in this country, throughout the county, throughout the State, throughout the country, through our entire history. It's nothing new. There is nothing different about that standard of proof. That standard of proof does not require perfection.' " (*Harris*, 129 Ill. 2d at 161, 544 N.E.2d at 373.)

The *Harris* court held that the prosecutor's statements were proper and did not reduce the State's burden of proof. (*Harris*, 129 Ill. 2d at 161, 544 N.E.2d at 373.) In the present case, the prosecutor's remark did not reduce the State's burden of proof and falls within the scope of the ruling in *Harris*. Accordingly, we find that the prosecutor's statement was proper.

■ Defendants next contend that the prosecutor, in rebuttal, attacked the integrity of defense counsel when he commented on the victim's prior illegal possession of a weapon, and the fact that he was not carrying a weapon when he was assaulted by defendants. We find that this statement was proper because defense counsel invited the State's response in rebuttal. In his closing argument, defense counsel stated:

> "I put to each and every one of you, you would not have used a name different from your own, or given a date of birth different from your own, and failed to appear in court pursuant to a lawful order, and never have gone back, and have a warrant out for your arrest."

The prosecutor's response in rebuttal was invited by defense counsel's attack upon the victim's credibility. "Where defense counsel provokes a response, defendant cannot complain that the State's reply denied him a fair trial." (*People v. Lyles* (1985), 106 Ill. 2d 373, 390, 478 N.E.2d 291, 297.) Accordingly, we find that the prosecutor's comment was proper.

■ Finally, defendants contend that the prosecutor improperly appealed to the emotions of the jurors when he stated that people in the City of Chicago were afraid to travel to and from work because of individuals like defendants, and when he encouraged the jury to "send a message to the community" that violent crime will not be tolerated. The prosecutorial argument in the instant case is similar to the prosecutor's comment during the State's closing argument in *People v. Harris* (1989), 129 Ill. 2d 123, 544 N.E.2d 357. In *Harris* the defend-

ant claimed that the following comment was so prejudicial as to deprive defendant of a fair trial:

> " 'Everybody hears about crime. Nobody does anything about it. You have a unique opportunity to actually do something about crime on your streets.' *** 'You are the only ones that sit between this man, this ticking bomb, and that door.' "

(*Harris*, 129 Ill. 2d at 159, 544 N.E.2d at 372.) Our supreme court held that the aforementioned remark was "apparently intended to persuade the jurors to convict because by convicting they would prevent both crime in general, and further crime by this defendant. As such, [the remarks] were proper. It is entirely proper for the prosecutor to dwell upon the evil results of crime and to urge the fearless administration of the law." (*Harris*, 129 Ill. 2d at 159, 544 N.E.2d at 372.) As in *Harris*, the prosecutor in the instant case told the jurors that they had the opportunity to take action against violent crime. Therefore, the prosecutor's remark in the present case was proper. For the aforementioned reasons, we hold that defendants received a fair trial.

■ Finally, defendants contend that the cumulative effect of the trial court's admission of Hunter's testimony and the prosecutor's subsequent arguments based upon her testimony prejudiced the jury and denied them a fair trial. The State, in reliance upon *People v. Albanese* (1984), 102 Ill. 2d 54, 83, 464 N.E.2d 206, 220, maintains that defendants' claim for cumulative error must be rejected because they cannot demonstrate that the trial court committed any error.

In instances where individual errors committed by a trial court do not merit reversal alone, the cumulative effect of said errors may deprive the defendant of a fair trial. (*People v. Johnson* (1991), 215 Ill. App. 3d 713, 734-35, 575 N.E.2d 1247, 1260-61.) In such cases, due process and fundamental fairness require that the defendant's convictions be reversed and his cause remanded for a new trial. *Johnson*, 215 Ill. App. 3d at 734-35, 575 N.E.2d at 1260-61.

In the present case, the trial court's sole error was harmless in light of the overwhelming evidence of defendants' guilt. Accordingly, we find that the cumulative effect of the errors at trial did not deprive defendant of a fair trial or due process of law.

For the aforementioned reasons, we affirm the judgment of the circuit court.

Affirmed.

GREIMAN, P.J., and CERDA, J., concur.