No. 2--00--0695

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT 

_________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit

OF ILLINOIS, ) Court of Winnebago County.

)

)

Plaintiff-Appellee, )

)

v. ) No. 95--CF--698

)

DANA D. SIMMONS, )

) Honorable

) Richard W. Vidal,

Defendant-Appellant. ) Judge, Presiding.

_________________________________________________________________

PRESIDING JUSTICE HUTCHINSON delivered the opinion of the court:

In 1996 a jury convicted defendant, Dana D. Simmons, of the offense of first-degree murder (720 ILCS 5/9--1(a)(1) (West 1994)).  The trial court imposed a sentence of 80 years' imprisonment.  Defendant appealed, and this court reversed his conviction and remanded the cause for a new trial.  See 
People v. Simmons
, No. 2--96--1077 (August 24, 1998) (unpublished order pursuant to Supreme Court Rule 23).  In February 2000 defendant was retried, and a jury again convicted defendant of the offense of first-degree murder; the trial court sentenced defendant to 80 years' imprisonment.  Following the trial court's denial of his posttrial motion, defendant timely appeals.  Defendant contends that he received the ineffective assistance of counsel, challenges the trial court's authority to impose an extended-term sentence, and claims that the trial court abused its discretion in its imposition of an 80-year sentence.  We affirm.

Just before trial commenced, defense counsel moved 
in limine
 for the trial court to enter an order prohibiting the State from referring to Sebastian Patterson, a witness, as "Slick" during its cross-examination of him.  The trial court conducted a hearing, and defense counsel clarified that he was not requesting that the State be forbidden from referring to Patterson or other witnesses by their nicknames during its opening statement and closing argument but that the State should not be permitted to use the nickname repeatedly so as to make it appear to demean the witness and ultimately prejudice defendant.  The trial court found that the nickname "Slick" and the other nicknames were relevant to the identification of witnesses to and participants in the matter but granted the motion, which prohibited the State from constantly referring to the witnesses by their nicknames during its examination or cross-examination of those witnesses.

The record reflects that on March 10, 1995, Bocci Wills (the victim) went to the Amoco gas station located on West State Street in Rockford.  He was driving a black Bronco and accompanied by two friends, Amavlee Macklin and Keonta Burnell.  When they arrived, Wills parked by a pay phone and he and Macklin exited the vehicle.  Wills walked toward the gas station and made eye contact with defendant.  Defendant was at the gas station with two friends, Rodney Kinds and Sebastian Patterson.  A few minutes later, a physical altercation erupted between Wills and defendant.  Wills struck defendant in the face, causing his face to bleed.  They fought for several minutes while others watched.  A gun fell from defendant's coat to the ground, and Patterson picked up the gun.

Defendant and Wills continued to fight.  Defendant called for help, and Kinds retrieved a 9-millimeter gun from his car and began firing toward Wills.  Patterson took the gun he had and held it against Macklin and warned him not to move.  Wills began running toward the Bronco, which Burnell had driven to the area of the fight scene.  Wills appeared to have been hit in the legs by gunfire and fell to the ground.  At this point defendant appeared to have a gun; he admittedly shot at Wills at least four times.  Wills suffered a total of 10 gunshot wounds but died as a result of a single gunshot wound to the back of his head.  The State's witnesses testified that defendant stood over the victim and shot him as he lay on the ground.  Defendant, Patterson, and Kinds fled the scene.

Defendant left the state and traveled for five months until he and Kinds were arrested in Milwaukee, Wisconsin.  Patterson had previously surrendered himself to the police.  At the time of his arrest, defendant admitted that he had used a 9-millimeter handgun to shoot at Wills.  Police found evidence at the scene that at least 17 shots had been fired.

The parties presented their closing arguments, the trial court instructed the jury, and the jury retired to deliberate.  The jury found defendant guilty of the offense of first-degree murder, and the trial court entered judgment on the verdict.  Defendant filed a posttrial motion, and, following a hearing, the trial court denied the motion.  Proceeding to the sentencing phase, the trial court reflected upon the factors in aggravation.  It found that defendant had a substantial history of criminal conduct, including a juvenile record, a misdemeanor offense of resisting a police officer, and a felony offense of aggravated battery.  The trial court commented that the State presented compelling evidence that defendant fired the weapon that killed the victim in an execution-style manner while the victim was attempting to flee, had fallen, and was wounded.  The trial court found that the offense was accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty and determined that defendant was eligible for extended-term sentencing.  The trial court sentenced defendant to a term of 80 years' imprisonment.  The trial court denied defendant's motion to reconsider his sentence, and defendant timely appeals.

Defendant contends that a combination of prosecutorial misconduct and the ineffective assistance of counsel deprived him of a fair trial.  He argues that the State committed numerous errors during its closing and rebuttal arguments and that the cumulative effect of defense counsel's failure to object to the errors constituted ineffective assistance.  Defendant concedes that the allegations of prosecutorial misconduct were not raised in his posttrial motion.  Generally, to preserve an issue for review, a defendant must both make a contemporaneous objection and include the alleged error in a posttrial motion.  See, 
e.g.
, 
People v. Banks
, 161 Ill. 2d 119, 143 (1994).  By failing to do so, the issue is waived on appeal.  
People v. Enoch
, 122 Ill. 2d 176, 186 (1988).  Our supreme court has consistently recognized that the failure to raise an issue in a written motion for a new trial prevents raising the issue on appeal.  See 
People v. Towns
, 174 Ill. 2d 453, 464 (1996).  However, defendant requests that we consider this issue under the plain error doctrine, and we will do so.  See 134 Ill. 2d R. 615(a); 
Towns
, 174 Ill. 2d at 464, citing 
People v. Carlson
, 79 Ill. 2d 564 (1980) (stating that, under the plain error doctrine, courts may address a waived issue if the evidence is closely balanced or if the error affects substantial rights).

Defendant first argues that the prosecutor's closing argument and rebuttal argument denied him the right to a fair trial.  Specifically, defendant argues that the prosecutor posited that the reason the fight between Wills and defendant came about was likely very trivial; the prosecutor reminded the jury that it was allowed to hear the victim's last moments on the 911 audiotape; the prosecutor recounted the medical examiner's testimony where one of the prosecutors served as a model regarding the trajectory of the bullets upon the victim; the prosecutor asked for a verdict of first-degree murder because defendant's conduct deserved nothing less than first-degree murder; the prosecutor referred to Patterson as "Slick" in an alleged violation of a motion 
in limine
; and the prosecutor argued in the rebuttal argument that a fist fight was insufficient provocation to result in gunfire.

We note that a prosecutor is allowed a great deal of latitude in giving a closing argument.  
People v. Cisewski
, 118 Ill. 2d 163, 175 (1987); 
People v. Siefke
, 195 Ill. App. 3d 135, 144 (1990).  The trial court's determination of the propriety of the closing argument generally will be followed on appeal absent a clear abuse of discretion.  
Cisewski
, 118 Ill. 2d at 175.  Arguments and statements based upon the facts in evidence, or upon reasonable inferences drawn therefrom, are within the scope of proper argument.  
People v. Terry
, 99 Ill. 2d 508, 517 (1984).  In reviewing allegations of prosecutorial misconduct, the closing arguments of both the State and defense counsel must be examined in their entirety, and the allegedly improper remarks must be placed in their proper context.  
Cisewski
, 118 Ill. 2d at 175-76.  Even where certain remarks are found to be improper, they will not be considered reversible error unless they constitute a material factor in the defendant's conviction or result in substantial prejudice to the accused such that the verdict would have been different had they not been made.  
Terry
, 99 Ill. 2d at 517.

After reading the prosecutor's and defense counsel's closing arguments in their entirety, we hold that the prosecutor's remarks did not constitute a material factor in defendant's conviction or result in substantial prejudice such that the verdict would have been different had the comments not been made.  The prosecutor's remarks were all reasonable inferences based on the testimony and evidence presented.  The prosecutor's reference to Patterson as "Slick" during his closing argument was previously allowed by the trial court and defense counsel and was not a violation of the motion 
in limine
.  In rebuttal, the prosecutor argued in response to defense counsel's argument regarding provocation.  Defense counsel urged the jury to consider the mitigating factors before rendering its verdict, and the prosecutor rebutted defense counsel's argument.  The prosecutor argued that the fight between the victim and defendant was a one-on-one fair fight that started with a punch and that the fight had not escalated to the point where using a gun was justified, a reasonable inference based upon the testimony and evidence presented.  We also note that the trial court instructed the jury that opening statements and closing arguments were not evidence.  See 
People v. Reeves
, 228 Ill. App. 3d 788 (1992).  Therefore, defendant suffered no error or prejudice resulting from the prosecutor's closing argument and rebuttal argument.

Defendant also argues that defense counsel's failure to object during the prosecutor's closing and rebuttal arguments prejudiced his right to a fair trial and, as a result, he received the ineffective assistance of counsel.  Generally, to establish the  ineffective assistance of counsel, a defendant must show both that counsel's representation fell below an objective standard of reasonableness and that a reasonable probability exists that, but for the error, the result of the trial would have been different.  
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); 
People v. Albanese
, 104 Ill. 2d 504 (1984)(adopting 
Strickland
).  However, we may resolve a claim of the ineffective assistance of counsel by reaching only the prejudice component, for the lack of prejudice renders irrelevant the issue of counsel's performance.  
People v. Towns
, 174 Ill. 2d 453, 469 (1996), citing 
People v. Erickson
, 161 Ill. 2d 82, 90 (1993).

Generally, decisions such as what matters to object to and when to object are matters of trial strategy.  
People v. Pecoraro
, 175 Ill. 2d 294, 327 (1997).  A decision that involves a matter of trial strategy will typically not support a claim of ineffective representation.  
People v. Hobley
, 159 Ill. 2d 272, 305 (1994), citing 
People v. Flores
, 128 Ill. 2d 66, 106 (1989).  Moreover, reviewing courts have repeatedly held that the prosecutor must be given wide latitude in her or his ability to argue before the jury.  
People v. Page
, 156 Ill. 2d 258 (1993).

Defendant has failed to establish that a reasonable probability existed that the outcome of his trial would have been different had defense counsel objected to any comments made during the prosecutor's closing arguments.  Nothing in the record indicates that the result of the proceeding would have been different had defense counsel engaged in such strategies.  Because no prejudice resulted, it cannot be said that the trial strategy of defense counsel denied defendant the effective assistance of counsel.  Accordingly, we hold that trial counsel was not ineffective.

Defendant also contends that the cumulative effect of the prosecutor's closing and rebuttal arguments prejudiced the jury and denied him a fair trial.  In instances where individual errors committed by a trial court do not merit reversal alone, the cumulative effect of the errors may deprive a defendant of a fair trial.  
People v. Batson
, 225 Ill. App. 3d 157, 169 (1992).  In such cases, due process and fundamental fairness require that the defendant's conviction be reversed and the cause remanded for a new trial.  
Batson
, 225 Ill. App. 3d at 169.  In the present case, we determined that the alleged instances of misconduct were not erroneous and did not result in prejudice to defendant.  Accordingly, we find that the cumulative effect of the alleged errors at trial did not deprive defendant of a fair trial.

Defendant next challenges the trial court's authority to impose an extended-term sentence based upon the Supreme Court ruling announced in 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).  In the present case, the trial court sentenced defendant to an extended-term of 80 years' imprisonment after finding that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.  See 730 ILCS 5/5--8--1(a)(1)(a), 5--8--2(a)(1), 5--5--3.2(b)(2) (West 1994).  Defendant cites 
People v. Lee
, 318 Ill. App. 3d 417 (2000), which relies upon this court's conclusion in 
People v. Joyner
, 317 Ill. App. 3d 93 (2000), in support of his argument to vacate or reduce his sentence.

This court has visited and revisited the 
Apprendi
 decision numerous times since 
Joyner
 was decided.  In 
People v. Rivera
, No. 2--98--1662 (March 21, 2002), we relied upon our supreme court's opinion in 
People v. Ford
, 198 Ill. 2d 68 (2001), and a decision from the First District, 
People v. Vida
, 323 Ill. App. 3d 554 (2001), and decided that our state's statutory sentencing scheme did not offend the principles in 
Apprendi
.  In 
Rivera
, the trial court found that the murder the defendant was found guilty of committing was accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty.  Based upon the evidence presented, it determined that the defendant should receive a sentence of natural life imprisonment.  This court found that the defendant's sentence of natural life imprisonment was specifically authorized by statute and held that the trial court's imposition of the sentence complied with the rule announced in 
Apprendi
.  
Rivera
, slip op. at 28.

Since this court decided 
Rivera
, however, our supreme court has decided three cases that provide us with a glimmer of guidance with respect to the issue now facing us on appeal.  In 
People v. Davis
, No. 89704 (February 22, 2002), a jury found the defendant guilty of multiple counts of the offense of first-degree murder and thereafter found him eligible for the death penalty.  The defendant waived the jury for the second phase of sentencing, and the trial court sentenced the defendant to death.  On appeal, the defendant challenged, 
inter alia
, the trial court's imposition of  the death penalty.  In affirming the defendant's sentence, the 
Davis
 court examined its prior analysis and holding in 
People v. Brownell
, 79 Ill. 2d 508 (1980), wherein the 
Brownell
 court stated, "[t]here is simply one murder statute, which includes within it a provision for the imposition of the death sentence."  
Davis
, slip op. at 23, quoting 
Brownell
, 79 Ill. 2d at 527.  The 
Davis
 court reaffirmed the 
Brownell
 decision and additionally explained that "[a]ggravating factors are not elements of the offense of murder.  They are sentencing factors."  
Davis
, slip op. at 24.

In 
People v. Jackson
, No. 91359 (April 18, 2002), the defendant pleaded guilty to a Class 3 felony of aggravated battery (720 ILCS 5/12–4 (West 1996)) and, in exchange, the State agreed not to seek an extended-term penalty.  The trial court elicited facts from the defendant regarding the circumstances of the offense and admonished her extensively and specifically regarding the consequences of pleading guilty.  The trial court accepted the factual basis, determined that the defendant's plea was knowing and voluntary, and accepted the plea.  Then at sentencing, the trial court found that the defendant's behavior in committing the crime was exceptionally brutal and indicative of wanton cruelty and imposed an extended-term sentence of 10 years' imprisonment.  
Jackson
, slip op. at 4-5.  On appeal to our supreme court, the 
Jackson
 court found that a defendant's plea of guilty waived 
Apprendi
-based sentencing objections on appeal.  
Jackson
, slip op. at 7.  However, within its decision the supreme court addressed the defendant's challenge to the trial court's authority to impose an extended term of imprisonment.  The 
Jackson
 court rejected the defendant's argument and stated that the statutory scheme clearly permitted the trial court to impose the extended term.  
Jackson
, slip op. at 11, citing 730 ILCS 5/5--5--3.2(b)(2) (West 1996) (permitting a trial court to impose an extended term of imprisonment upon a finding that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty).  Accordingly, the 
Jackson
 court concluded, the trial court was statutorily authorized to impose an extended-term sentence.  
Jackson
, slip op. at 11.

Last, in 
Hill v. Cowan
, No. 90229 (April 18, 2002), the defendant pleaded guilty in 1982 to attempted murder, rape, and armed robbery.  The trial court imposed an extended-term sentence on each conviction based on its finding that the offenses were accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.  
Hill
, slip op. at 1.  The defendant petitioned for immediate release under the Habeas Corpus Act (735 ILCS 5/10--101 
et seq.
 (West 2000)), contending that his extended-term sentences were unconstitutional in light of the 
Apprendi
 decision.  The trial court granted the petition, and the State appealed.  On appeal, the 
Hill
 court reversed, concluding that a guilty plea waived 
Apprendi
 concerns.  
Hill
, slip op. at 2.  Although the court's reversal was dictated by its result reached earlier in 
Jackson
, it nevertheless reiterated principles from its rationale in 
Jackson
 to support its conclusion.  The 
Hill
 court reaffirmed the constitutionality of our statutory sentencing scheme, which permits a trial court to impose an extended-term sentence upon a finding that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.  
Hill
, slip op. at 3-4.

In the present case, defendant was charged with committing the offense of murder in the first degree and was convicted of and sentenced for the offense of murder in the first degree.  Implicit within 
Davis
 is that a tribunal must sufficiently admonish a defendant to the extent that the defendant is effectively on notice that, if certain aggravating factors exist, the defendant may receive an extended-term sentence.  This admonishment provides a defendant an opportunity to prepare an adequate defense and precludes a showing of subsequent prejudice based upon a lack of notice.  Here, the record reflects that the trial court admonished defendant at the rearraignment hearing and informed defendant that, if he were found guilty and if certain aggravating factors were found, he could receive an extended-term sentence.  Defendant responded that he understood and acknowledged the trial court's admonishment.

Moreover, in accordance with the rationale of 
Brownell
 and 
Davis
, we have one statutory scheme for the offense of murder, which not only provides for a sentence of death but also provides for the imposition of an extended-term sentence.  See 730 ILCS 5/5--5--3.2(b) (West 2000).  Pursuant to 
Jackson
 and reaffirmed in 
Hill
, the statutory scheme at issue here is constitutional and does not offend 
Apprendi
.  Pursuant to 
Jackson
 and reaffirmed in 
Hill
, a trial court is statutorily authorized to impose an extended term of imprisonment upon a defendant when the defendant is convicted of a felony and the trial court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.  In the present case, a jury convicted defendant of committing the offense of first-degree murder.  At the sentencing hearing, the trial court found that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty and determined that defendant was eligible for extended-term sentencing.  The trial court thereafter sentenced defendant to a term of 80 years' imprisonment.  Pursuant to 
Davis
, the factors the trial court considered when it sentenced defendant to an extended term were sentencing factors and not elements of the offense of murder.  We acknowledge that the recent decisions from our supreme court all involved defendants who pleaded guilty and acknowledge that circumstance is absent in the present case, but, despite that distinction, we believe that the general principles in 
Brownell
, 
Davis
, 
Jackson
, and 
Hill
 are applicable here as well.  Therefore, inasmuch as this court and our supreme court have concluded that Illinois' scheme for murder does not offend the principles announced in 
Apprendi
, defendant's claim fails.

The dissent proposes a simple question-and-answer format taken from 
Apprendi
 to determine the constitutionality of a defendant's sentence:  "does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?"  
Apprendi
, 530 U.S. at 494, 147 L. Ed. 2d at 457, 120 S. Ct. at 2365.  The dissent posits that the jury's guilty verdict indisputably exposed defendant to a punishment range of 20 to 60 years' imprisonment for the offense of first-degree murder (see 730 ILCS 5/5--8--1(a)(1)(a) (West 1994)).  The dissent states that the trial court's subsequent "brutal or heinous" finding exposed defendant to a greater punishment of 100 years' imprisonment (see 730 ILCS 5/5--8--2(a)(1), 5--5--3.2(b)(2) West 1994)) or life imprisonment (see 730 ILCS 5/5--8--1(a)(1)(b) (West 1994)).  The dissent concludes that, because the jury did not make the "brutal or heinous" finding, defendant's 80-year sentence is unconstitutional.  We believe the dissent's rationale is entirely at odds with 
Apprendi
, 
Brownell
, 
Davis
, 
Jackson
, and 
Hill
.

Initially, we note that the circumstances in the present case are dissimilar to the situation at issue in 
Apprendi
.  In 
Apprendi
, the defendant pleaded guilty to two counts of possessing a firearm for an unlawful purpose and one count of unlawfully possessing an antipersonnel bomb.  The New Jersey statutes classified the firearm charge as a "second-degree" offense, which carried a penalty range between 5 and 10 years' imprisonment.  The bomb charge was classified as a "third-degree" offense, which carried a penalty range between three and five years' imprisonment.  As part of the defendant's plea agreement, the sentence on the third-degree offense was to run concurrently with the other sentences.  Therefore, under the New Jersey statutory sentencing scheme for the two second-degree offenses, the maximum penalty would amount to two consecutive 10-year terms, or 20 years in aggregate.

The trial court accepted the pleas and conducted a hearing on the prosecutor's motion for an extended term on the ground that the offense was committed with a biased purpose.  The New Jersey legislature had enacted a "hate crime" law, which carried a penalty range identical to that of crimes in the first degree, that is, between 10 and 20 years' imprisonment.  The hate crime sentencing scheme allowed a trial court to impose an "extended term" of imprisonment upon its finding that the defendant acted with a purpose to intimidate the victims because of their race or ethnicity.  
Apprendi
, 530 U.S. at 469-70, 147 L. Ed. 2d at 442, 120 S. Ct. at 2352.  Following the hearing, the trial court found the crime was motivated by racial bias and held that the "hate crime sentence enhancement" applied.  
Apprendi
, 530 U.S. at 470, 147 L. Ed. 2d at 443, 120 S. Ct. at 2352.  The trial court used the hate crime sentencing scheme and sentenced the defendant to 12 years' imprisonment on one firearm offense and to shorter concurrent sentences on the other two counts.

The Supreme Court found that the factor that led to the more severe punishment was an element of the more serious offense of hate crime and not merely an aggravating factor used to increase the defendant's sentence within the penalty range for the second-degree offense of possessing a firearm for an unlawful purpose. 
Apprendi
, 530 U.S. at 492-93, 147 L. Ed. 2d at 456-57, 120 S. Ct. at 2364.  In other words, the trial court's finding effectively turned a second-degree offense into a first-degree offense under New Jersey's criminal code.  
Apprendi
, 530 U.S. at 494, 147 L. Ed. 2d at 457, 120 S. Ct. at 2365.  Based upon this analysis, the Supreme Court ruled that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."   
Apprendi
, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

By way of analogy, we will explain our rationale and distinguish the facts and circumstances of 
Apprendi
 from those present here.  In Illinois, the offense of first-degree murder is a separate class of felony (see 730 ILCS 5/5--5--1(b)(1) (West 2000)) than that of involuntary manslaughter, which is a Class 3 felony (720 ILCS 5/9--3(d)(1) (West 2000); 730 ILCS 5/5--5--1(b)(5) (West 2000)).  The statutory sentencing scheme for first-degree murder includes penalties ranging from 20 to 60 years' imprisonment (730 ILCS 5/5--8--1(a)(1)(a) (West 2000)), 60 to 100 years' imprisonment (730 ILCS 5/5--8--2(a)(1) (West 2000)), natural life imprisonment (730 ILCS 5/5--8--1(a)(1)(b), (a)(1)(c) (West 2000)), and death (720 ILCS 5/9–1(b) through (h) (West 2000)).  The statutory sentencing scheme for involuntary manslaughter includes penalties ranging from 2 to 5 years' imprisonment (730 ILCS 5/5--8--1(a)(6) (West 2000)) and 5 to 10 years' imprisonment (730 ILCS 5/5--8--2(a)(5) (West 2000)).  Illinois also has a separate hate crime statute (720 ILCS 5/12--7.1 (West 2000)), which is a Class 4 felony for the first offense and a Class 2 felony for each subsequent offense (720 ILCS 5/12--7.1(b) (West 2000)).  Penalties for a Class 4 felony range from 1 to 3 years' imprisonment (730 ILCS 5/5--8--1(a)(7) (West 2000)) and  3 to 6 years' imprisonment (730 ILCS 5/5--8--2(a)(6) (West 2000)), and penalties for a Class 2 felony range from 3 to 7 years' imprisonment (730 ILCS 5/5--8--1(a)(5) (West 2000)) and 7 to 14 years' imprisonment (730 ILCS 5/5--8--2(a)(4) (West 2000)).

In the present case, defendant was found guilty of first-degree murder and sentenced for first-degree murder.  Defendant was not found guilty of involuntary manslaughter and sentenced for first-degree murder.  
Apprendi
 concerns would be implicated in this case if a jury had convicted defendant of involuntary manslaughter but the trial court made a posttrial finding that defendant possessed the requisite intent to commit first-degree murder and sentenced him pursuant to the first-degree murder sentencing scheme. 

The dissent claims a jury's conviction of the offense of first-degree murder exposes a defendant to a punishment range of only 20 to 60 years' imprisonment.  We disagree.  As originally stated in 
Brownell
 and reiterated in 
Davis
, " 'there is only one offense of murder in Illinois; no distinction is made between capital and non-capital murder.' "  
Davis
, slip op. at 23, quoting 
Brownell
, 79 Ill. 2d at 524.  "Further
, '[t]here is no offense of "aggravated," as opposed to simple, murder, in Illinois.  There is simply one murder statute, which includes within it a provision for the imposition of the death sentence.' "  
Davis
, slip op. at 23, quoting 
Brownell
, 79 Ill. 2d at 527.  In the present case, the State did not seek to have the death penalty imposed upon defendant.  Therefore, when the jury found defendant guilty of first-degree murder, the maximum sentence defendant could receive was natural life imprisonment (730 ILCS 5/5--8--1(a)(1)(b), (a)(1)(c) (West 2000)) and not merely 20 to 60 years' imprisonment.

Our determination here is further supported by way of analogy to our supreme court's analysis in 
Jackson
.  In 
Jackson
, the defendant was charged with aggravated battery, a Class 3 felony (720 ILCS 5/12--4 (West 1996)).  The statutory sentencing scheme for aggravated battery, a Class 3 felony, included penalties ranging from 2 to 5 years' imprisonment (730 ILCS 5/5--8--1(a)(6) (West 1996)) and 5 to 10 years' imprisonment (730 ILCS 5/5--8--2(a)(5) (West 1996)).  The trial court sentenced the defendant to an extended term of 10 years' imprisonment.  The 
Jackson
 court examined the statutory sentencing scheme and determined that the trial court was clearly authorized to impose an extended-term sentence upon its finding that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.  
Jackson
, slip op. at 11.  Through its analysis, 
Jackson
 inherently establishes that the statutory sentencing range of punishment upon a conviction of a Class 3 felony includes the extended-term statute.  Therefore, the statutory sentencing range of imprisonment for a Class 3 felony is 2 to 10 years' imprisonment and not 2 to 5 years' imprisonment.  In the present case, therefore, taking into consideration the sentencing scheme pertaining to first-degree murder, the statutory sentencing range of punishment upon a conviction is from 20 years' imprisonment to death.  If the death penalty is not sought, as was the case here, then the range extends only to natural life.  Accordingly, because the trial court here did not impose a sentence greater than natural life, 
Apprendi
 concerns are not implicated.

The dissent concedes that defendant's sentence was statutorily authorized but yet unconstitutional because the "brutal or heinous" finding was not submitted to a jury and proved beyond a reasonable doubt but rather was made by a trial court.  We also disagree with this premise.  Taking the dissent's premise as true, then an 
Apprendi
 violation would also occur in the following scenario:  A jury convicts a defendant of first-degree murder and makes no other findings.  At sentencing, the trial court is inclined to impose a 20-year sentence for the offense but then makes a posttrial finding that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.  It thereafter imposed a 60-year sentence, clearly within the maximum sentencing range articulated by the dissent.  Although the "brutal or heinous" finding was not submitted to the jury or proved beyond a reasonable doubt, we believe a reviewing court would be hard-pressed to find a constitutional violation.  See 
People v. Jones
, 168 Ill. 2d 367, 373-74 (1995) (stating that trial courts have broad discretionary powers to choose an appropriate sentence within the statutory range permissible for the pertinent criminal offense for which a defendant has been tried and convicted).

Perhaps it is the dissent's argument that "brutal or heinous" is an unconstitutionally arbitrary, vague, and subjective factor upon which to increase 
any
 sentence, either within the lesser range of punishment or as a basis to impose an extended-term sentence.  However, that argument would likely fail because our supreme court has already held that "brutal" and "heinous" are not unconstitutionally vague concepts.  See 
People v. La Pointe
, 88 Ill. 2d 482, 499-501 (1981).

Or, perhaps the dissent is trying to argue that, when the trial court made the "brutal or heinous" finding, it increased defendant's sentence beyond the maximum authorized statutory sentence, resulting in a "sentence enhancement."  See 
Apprendi
, 530 U.S. at 494 n.19, 147 L. Ed. 2d at 457 n.19, 120 S. Ct. at 2365 n.19.  However, this is not an enhancement situation, and the footnote following the 
Apprendi
 quote the dissent relies on clearly explains the difference between a "sentencing factor" and a "sentence enhancement."  See 
Apprendi
, 530 U.S. at 494 n.19, 147 L. Ed. 2d at 457 n.19, 120 S. Ct. at 2365 n.19.  The 
Apprendi
 court defined "sentence enhancement" as the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict.  
Apprendi
, 530 U.S. at 494 n.19, 147 L. Ed. 2d at 457 n.19, 120 S. Ct. at 2365 n.19.  The 
Apprendi
 court defined "sentencing factor" as "a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence 
within the range
 authorized by the jury’s finding that the defendant is guilty of a particular offense."  
Apprendi
, 530 U.S. at 494 n.19, 147 L. Ed. 2d at 457 n.19, 120 S. Ct. at 2365 n.19.

A factual finding of "brutal or heinous" is a factor used in determining a particular sentence to impose upon a criminal defendant.  See 
Jackson
, slip op. at 5; see also 
Davis
, slip op. at 20, discussing 
People v. Ford
, 198 Ill. 2d 68, 74 (2001).  In the present case, therefore, the trial court's "brutal or heinous" finding was an aggravating circumstance that it used to support a specific sentence, 80 years, within the range authorized by the jury's finding that defendant was guilty of the offense of first-degree murder.  
Apprendi
 does not stand for the proposition that a jury must find aggravating sentencing factors beyond a reasonable doubt.  
Apprendi
 holds that the prosecution must submit to a jury, and the jury must find beyond a reasonable doubt, those factors that would effectively render a defendant guilty of a new and independent offense, 
e.g.
, the requisite mental state factor for involuntary manslaughter to first-degree murder.

In our case, then, does the trial court's "brutal or heinous" finding effectively create a new offense?  The answer is clearly no.  There is no greater offense than first-degree murder.  
Davis
, slip op. at 23, citing 
Brownell
, 79 Ill. 2d at 527.  Accordingly, the trial court's finding of "brutal or heinous" did not create a  new or independent crime.  Instead, the finding was merely an aggravating circumstance under the crime that defendant was found guilty of committing--first-degree murder. The trial court considered the factor to punish defendant more severely, and the punishment was authorized by the jury's guilty verdict.  Because defendant's sentence was not beyond the maximum authorized by our statutory sentencing scheme, there was no "sentence enhancement," and defendant's 
Apprendi
 claim fails.

Last, defendant contends that the trial court abused its discretion when it sentenced him to 80 years' imprisonment.  Defendant asks this court to reconsider the length of his sentence on the grounds that Wills was the initial aggressor; defendant's response in the present case was shaped by a prior altercation in which he was shot and suffered the loss of one eye; and he was exposed to a dysfunctional family environment.

The trial court has broad discretionary powers in imposing a sentence.  
People v. Stacey
, 193 Ill. 2d 203, 209 (2000).  The trial court's sentencing decision is entitled to great deference on review.  
Stacey
, 193 Ill. 2d at 209.  The trial court is granted such deference because the trial court is generally in a better position than the reviewing court to determine the appropriate sentence.  The trial judge has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age.  
People v. Streit
, 142 Ill. 2d 13, 19 (1991); see also 
People v. Golden
, 323 Ill. App. 3d 892, 905 (2001).  The reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently.  
Streit
, 142 Ill. 2d at 19.

In the present case, defendant does not contend that the trial court failed to consider the aforementioned statutory mitigating factors.  See 730 ILCS 5/5--5--3.1(a)(7) (West 2000).  Rather, defendant argues that, if this reviewing court considers the mitigating factors, we would clearly find that an 80-year extended-term sentence was an abuse of the trial court's discretion.  However, this is not our standard of review.  See 
Streit
, 142 Ill. 2d at 19.  The trial court has a statutory duty to consider evidence in mitigation and aggravation in crafting a just sentence.  See 730 ILCS 5/5--5--3.1, 5--5--3.2 (West 2000).  Our review of the record reflects that the trial court did so at the aggravation and mitigation phase of the trial.  The trial court considered the mitigating factors and weighed those factors against the severity of defendant's crime, which included a fatal gunshot wound to the back of the head of an unarmed and wounded victim.  Because the sentence imposed by the trial court was within the bounds of that court's discretion, there is no reason to disturb that sentence based upon the totality of the record and circumstances presented to this court.  Accordingly, we affirm defendant's conviction and sentence.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

McLAREN, J., concurs.

CALLUM, J., dissenting:

As we determine whether the constitution permits a finding to be made by a judge, rather than a jury, 
Apprendi
 instructs us to ask the following question: "[D]oes the *** finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?"  
Apprendi
, 530 U.S. at 494, 147 L. Ed. 2d at 457, 120 S. Ct. at 2365.  If the answer is yes, the jury must make the finding beyond a reasonable doubt.  Here, the judge's "brutal or heinous" finding exposed defendant to a greater punishment than that authorized by the jury's guilty verdict, and defendant's sentence is unconstitutional.  Accordingly, I respectfully dissent.

The following facts are indisputable.  Alone, the jury's guilty verdict exposed defendant to a maximum of 60 years' imprisonment.  730 ILCS 5/5--8--1(a)(1)(a) (West 1994).  That is, before making the finding, the judge had no statutory authority to impose a greater sentence.  However, after the finding was made, defendant was exposed to a maximum of life imprisonment (730 ILCS 5/5--8--1(a)(1)(b) (West 1994)) or, for the purposes of extended-term sentencing, 100 years' imprisonment (730 ILCS 5/5--8--2(a)(1), 5--5--3.2(b)(2) (West 1994)).  Thus, the judge's finding exposed defendant to a greater punishment than that authorized by the jury's guilty verdict.

The majority insists that defendant's sentence complies with 
Apprendi
 because the judge was statutorily authorized to impose it.  The majority states that "a trial court is statutorily authorized to impose an extended term *** when the defendant is convicted *** and the trial court finds that the offense was *** brutal or heinous ***."  Slip op. at 13.  That statement is obviously true, but it does not answer the 
Apprendi
 question.  Indeed, 
Apprendi
 does not hold that a statutorily authorized sentence is 
ipso facto
 constitutional, as such a holding would make no sense.  Thus, I freely concede that defendant's sentence was statutorily authorized.  It was unconstitutional, however, because it was statutorily authorized 
upon a fact that was not submitted to the jury and proved beyond a reasonable doubt
.

Unwittingly, in accurately summarizing the relevant statutory scheme, the majority proves the 
Apprendi
 violation.  As it states, an extended term requires two things: the defendant's conviction and the trial court's finding.  Thus, the majority acknowledges that the conviction alone does not expose the defendant to an extended term; rather, the greater punishment is statutorily authorized only upon the trial court's finding.  In other words, the finding exposes the defendant to a greater punishment than that authorized by the conviction alone, 
i.e.
, the jury's guilty verdict.  
That
 is the answer to the 
Apprendi
 question.  
Cf.
 
People v. Tenney
, No. 2--00--0199 (April 29, 2002), slip op. at 18 (a defendant is not eligible for a sentence of life imprisonment upon a conviction of first-degree murder, but only upon the existence of certain aggravating factors).

When this court has asked the 
Apprendi
 question, it has answered it correctly.  See 
Joyner
, 317 Ill. App. 3d at 109-10 (invalidating life sentence based on judge's "brutal or heinous" finding); 
People v. Swift
, 322 Ill. App. 3d 127, 128-29 (2001) (extended-term sentence).  Unfortunately, in 
Rivera
, which the majority follows, we went astray.  In that case, a jury convicted the defendant of first-degree murder, and the judge, finding the crime "brutal or heinous," imposed a life sentence.  Adopting the First District's analysis in 
Vida
, we concluded that 
Apprendi
 was not violated because the life sentence was "specifically authorized by statute."  
Rivera
, slip op. at 28.  Again, however, 
Apprendi
 does not ask whether the punishment is "specifically authorized by statute"; it asks whether the punishment is greater than that authorized by the jury's guilty verdict.  Thus, the 
Rivera
 court, like the 
Vida
 court, neglected to answer the question that 
Apprendi
 presents.  Indeed, this court has already noted that "the reasoning in 
Rivera
 is flawed."  
Tenney
, slip op. at 18.

In 
Rivera
, we erred further in relying on the supreme court's decision in 
Ford
.  In that case, the defendant was convicted of first-degree murder.  He waived a jury for his capital sentencing hearing, and the judge found, beyond a reasonable doubt, that the defendant was eligible for the death penalty.  The judge then found the crime "brutal or heinous" and sentenced the defendant to 100 years' imprisonment.  The supreme court held that the "brutal or heinous" finding did not increase the authorized punishment in violation of 
Apprendi
.

The distinction between 
Ford
 and 
Rivera
 is obvious.  In 
Ford
, the maximum of death was set by facts that were submitted to the trier of fact and proved beyond a reasonable doubt.  Thus, when the "brutal or heinous" finding produced a sentence of imprisonment, the finding did not increase the punishment beyond that established in accordance with 
Apprendi
.  In 
Rivera
, however, the facts that were submitted to the trier of fact and proved beyond a reasonable doubt established a maximum of only 60 years' imprisonment.  Thus, the "brutal or heinous" finding 
did
 result in a greater punishment, life imprisonment, which was unconstitutional.

After following 
Rivera
, the majority cites three supreme court cases that supposedly "provide us with a glimmer of guidance with respect to the issue now facing us on appeal."  Slip op. at 10.  In my view, however, each case is as distinguishable as 
Ford
.

In 
Davis
, the supreme court followed 
Brownell
 to reject the defendant's argument that death-eligibility factors had to be charged in an indictment.  However, whether a factor must be charged in an indictment is a question different from whether that factor must be submitted to a jury and proved beyond a reasonable doubt.  Indeed, in 
Apprendi
, the Supreme Court specifically declined to address the former issue.  See 
Apprendi
, 530 U.S. at 477 n.3, 147 L. Ed. 2d at 447 n.3, 120 S. Ct. at 2355 n.3; 
Ford
, 198 Ill. 2d at 72 n.1.  Thus, though 
Davis
 suggests that the "brutal or heinous" factor need not be charged in an indictment, the case does not bear on the issue here--whether a jury must find the factor beyond a reasonable doubt.

In 
Jackson
 and 
Hill
, the supreme court noted that judges do not exceed their statutory authority in imposing extended-term sentences based on their "brutal or heinous" findings.  However, the court recognized that a statutorily authorized sentence is not necessarily a sentence that complies with 
Apprendi
.  Indeed, because the defendants had pleaded guilty, the supreme court declined to address their claims that their sentences, though statutorily authorized, were unconstitutional.  Thus, in evaluating whether defendant's sentence is unconstitutional, 
Jackson
 and 
Hill
 provide no guidance at all.

I believe that our inquiry should begin and end with 
Apprendi
 itself.  Once again, 
Apprendi
 asks, "[D]oes the *** finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?"  
Apprendi
, 530 U.S. at 494, 147 L. Ed. 2d at 457, 120 S. Ct. at 2365.  Here, the answer is yes.  The jury's guilty verdict exposed defendant to 60 years' imprisonment.  The "brutal or heinous" finding exposed him to life or 100 years' imprisonment.  Because the jury did not make that finding beyond a reasonable doubt, defendant's 80-year sentence is unconstitutional.

I dissent.